848 P.2d 308

**CITIZENS UTILITIES COMPANY, a Delaware corporation, Plaintiff/Appellee,**

v.

**NEW WEST HOMES, INC., an Arizona corporation, Defendant/Appellant,**

and

**Buck's Quality Roofing, Inc., an Arizona corporation, Defendant/Appellee.**

No. 2 CA–CV 92–0073.

Court of Appeals of Arizona, Division 2, Department B.

Sept. 22, 1992.

Motion to Withdraw Petition for Review Granted March 30, 1993.*

---

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Gaona & Haynes, P.C. by David F. Gaona, Phoenix, for plaintiff, appellee.

Bury, Moeller, Humphrey & O'Meara by David C. Bury and Roger W. Frazier, Tucson, for defendant, appellant.

Law Office of Michael E. Larkin, by Michael E. Larkin, Tucson, for defendant, appellee.

## OPINION

FERNANDEZ, Judge.

Appellee Citizens Utilities Company sued appellant New West Homes, Inc. and appellee Buck's Quality Roofing, Inc. for statutory indemnity pursuant to the High Voltage Power Lines and Safety Restrictions Act, A.R.S. §§ 40–360.41 through 40–360.-45. The trial court granted Citizens' motion for summary judgment against both defendants, and New West appeals, contending that the judgment relieves Citizens of liability for its own negligence. We affirm.

New West, a general contractor, agreed to build a custom home in Nogales, Arizona in 1988. Prior to 1970 Citizens had installed overhead electric lines across the property where the home was to be built. After construction began, New West notified Citizens that the house would be built directly underneath the power lines but took no further action. New West subcontracted with appellee Buck's to build the roof. On July 24, 1989, Darrell Garner, a roofer employed by Buck's, climbed on the parapet wall, reached up, and grabbed two of the power lines in an effort to keep them from hitting a "hot mop" that a fellow roofer was using. He was electrocuted by the 7,620–volt line and sustained serious injuries.

Garner and his wife sued Citizens in federal court, and Citizens tendered defense of the case to New West and Buck's. Both refused to defend, and Citizens filed this action. Shortly thereafter, it filed a motion for summary judgment. The court granted the motion August 29, 1991. Citizens subsequently sought an award of attorney's fees incurred in bringing this action, which the court granted.

On November 27, 1991, two months after its objection to the form of judgment had been sustained, New West moved to amend its answer in order to assert a cross-claim against Buck's for contribution. Both Citizens and Buck's opposed the motion, and the trial court denied it, finding that it was untimely and noting that judgment had already been entered on the existing complaint and answer.

New West argues on appeal that 1) Citizens should not be entitled to indemnity because it took no action after it received notice that work was being performed beneath the power lines, 2) a fact question exists whether the statutory violations are excusable, 3) Citizens was not entitled to attorney's fees, 4) Citizens should not be entitled to indemnity for a prospective settlement, and 5) the trial court improperly denied its motion to amend.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme School v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). In reviewing the grant of summary judgment, we view the evidence and all reasonable inferences arising from that evidence most favorably to the party who opposed the motion. *Hill–Shafer Partnership v. Chilson Family Trust*, 165 Ariz. 469, 799 P.2d 810 (1990).

## STATUTORY INDEMNITY

■ The pertinent provisions of the act read as follows:

Unless danger against contact with high voltage overhead lines has been effectively guarded against as provided by § 40–360.43:

1. A person or business entity shall not, individually or through an agent or employee, require any other person to perform any function or activity upon any land, building, highway or other premises if at any time during the performance of any function or activity it is possible that the person performing the function or activity could move or be placed closer to any high voltage overhead line or if it is possible that any part of any tool or material used by the person could be brought closer to any high voltage overhead line during the performance of any function or activity than the following clearances:

(a) For lines rated fifty KV or less, six feet of clearance....

A.R.S. § 40–360.42. Section 40–360.43 provides as follows:

A. If any person or business entity desires to temporarily carry on any function, activity, work or operation in closer proximity to any high voltage overhead line than permitted by this article, the person or business entity responsible for performing the work shall promptly notify the public utility operating the high voltage overhead line. *The person or business entity may perform the work only after satisfactorily mutual arrangements*, including coordination of work and construction schedules, *have been made* between the public entity operating the lines and the person or business entity responsible for performing the work....

B. *The person or business entity* responsible for performing the work in the vicinity of the high voltage overhead lines *shall pay any actual expenses of the public utility* operating high voltage overhead lines in providing arrangements for clearances, except in instances where the public utility operating high voltage overhead lines has installed lines within ten feet of an existing fixture or structure after the fixture or structure has been in place at the permanent location. *The public utility is not required to provide the arrangements for clearances until an agreement for payment has been made.*

(Emphasis added.) Thus, as we noted in *Tucson Electric Power Co. v. Dooley–Jones and Associates*, 155 Ariz. 340, 343, 746 P.2d 510, 513 (App.1987), the statute requires the business entity to:

1. Notify the utility that work will be performed,

2. Make satisfactory arrangements with the utility to implement safety measures, and

3. Enter into an agreement to pay the utility's expenses in implementing the measures.

■ As New West observes, we have held in previous overhead power line cases that a utility company is entitled to indemnity when the business entity fails to give notice of its activity prior to the beginning of work. *Tucson Electric Power Co. v. Kokosing Construction Co.*, 159 Ariz. 317, 767 P.2d 40 (App.1988); *Dooley–Jones and Associates, supra; Tucson Electric Power Co. v. Swengel–Robbins Construction Co.*, 153 Ariz. 486, 737 P.2d 1385 (App.1987). Contrary to its assertion, however, in none of those cases did we hold that a business entity will no longer have a statutory obligation to indemnify if it simply gives the required notice. In each of the cases, the utility clearly had not been given notice. Thus, the issue presented here has not previously been before us.

New West argues that Citizens is not entitled to indemnity because it was actively negligent in failing to take protective measures even after it received notice that construction was taking place beneath its lines. Essentially, New West's argument is that the giving of notice triggers an immediate duty on the part of the utility to implement safety measures so as to ensure that no one will be injured. That argument, however, ignores the specific statutory language. Notice is only the first of the three requirements of the act. The statute expressly requires that a business entity perform all three steps before it is no longer liable for indemnity; notice alone is insufficient. It is undisputed that New West neither made satisfactory arrangements with Citizens to implement safety measures

nor entered into an agreement to pay its expenses in implementing those measures.

As New West acknowledges, we have previously held that only statutory indemnity principles are applicable in cases such as this, not common law principles of indemnity. *Kokosing Construction, supra; Dooley–Jones and Associates, supra.* Therefore, we do not address its arguments based on common law principles.

We also find no merit to New West's contentions that Citizens is not entitled to be indemnified because it is in a better position than New West to take preventive measures to avoid injury to others once notice has been given and because violations of the second and third steps of the statute are "not of the same weight" as the violation of the notice requirement. The statute, however, makes no distinction among the three requirements; each must be followed for the entity to avoid liability for indemnity. Moreover, this court has previously expressed the legislative intent of the act as follows:

> We believe that, in enacting the High Voltage Power Lines and Safety Restrictions Act, our legislature considered the risk of electrocution at construction sites to be so substantial and severe as to impose a duty of care on both those contractors whose employees might come within close proximity to the potential harm and those contractors who by contract require others to come within the zone of danger prescribed by statute.

*Cohen v. Salt River Project,* 153 Ariz. 326, 329, 736 P.2d 809, 812 (App.1987). We find no expression of a legislative intent that a utility not be entitled to indemnity if the business entity has only given notice and failed to comply with the other two statutory requirements.

## EXCUSABLE VIOLATION

■ New West next contends that factual questions exist that preclude entry of summary judgment, citing *Monares v. Wilcoxson,* 153 Ariz. 359, 736 P.2d 1171 (App. 1987). In that case, we recognized that violations of the statute can be excused under some circumstances. There, the con-

tractor raised a fact question as to whether its violation of the statutes was excused because Phelps Dodge Corporation, the landowner and owner of the utility, had assured him arrangements had been made to disconnect or de-energize the lines. We held that statutory violations can be excused pursuant to Section 288 A of the Restatement (Second) of Torts (1965).

Section 288 A contains the following non-exclusive list of excuses:

> (a) the violation is reasonable because of the actor's incapacity;
>
> (b) he neither knows nor should know of the occasion for compliance;
>
> (c) he is unable after reasonable diligence or care to comply;
>
> (d) he is confronted by an emergency not due to his own misconduct;
>
> (e) compliance would involve a greater risk of harm to the actor or to others.

§ 288 A at 33. The only excuse New West has offered is that Citizens had notice of the construction work but failed to take protective measures, which would not have been costly. That is not the type of excuse addressed by the Restatement.

## ATTORNEY'S FEE AWARD

■ New West also complains because the trial court awarded Citizens $4,000 in attorney's fees for bringing this action. It argues that attorney's fees are not recoverable in indemnity actions, citing *INA Insurance Co. of North America v. Valley Forge Insurance Co.,* 150 Ariz. 248, 722 P.2d 975 (App.1986). Pursuant to that case, a party seeking indemnity may recover attorney's fees incurred in defending the underlying action but is not entitled to fees in the action that establishes its right to indemnity. That case, however, was decided on the basis of common law indemnity principles. We have already noted that those principles do not apply when statutory indemnity is involved.

The statute in this case, A.R.S. § 40–360.44(B), provides as follows:

> If a violation of this article results in physical or electrical contact with any high voltage overhead line, the person or

business entity violating this article is liable to the public utility operating the high voltage overhead line for *all damages to the facilities and all costs and expenses, including damages to third persons,* incurred by the public utility as a result of the contact.

(Emphasis added.) The statute thus provides for reimbursement of three separate items: 1) damages to the facilities, 2) damages to third persons, and 3) all other costs and expenses incurred by the utility. We agree with the trial court that attorney's fees were necessarily incurred in this case and must be awarded to make the utility whole.

### INCLUSION OF SETTLEMENT AMOUNT IN JUDGMENT

New West next argues that the trial court improperly awarded Citizens indemnity for any settlement it entered with the Garners in the federal court case. Among the specific items of damage Citizens is entitled to recover from New West in the judgment is the following:

> (c) The amount of any good faith settlement agreed to between Citizens Utilities Company and Darrell D. and Lisa Marie Garner, as approved by the Honorable Richard M. Bilby, Trial Judge in the pending United States District Court action, in lieu of a verdict....

New West contends that the court erred in granting prospective relief to Citizens, arguing that the language results in impermissible open-ended possibilities as to the amount of settlement and that it should not be liable for a settlement but only for a verdict.

We agree with both parties that New West should only be responsible for an underlying judgment that was defended with due diligence and reasonable prudence. *See Falcon v. Beverly Hills Mortgage Corp.,* 168 Ariz. 527, 815 P.2d 896 (1991); Restatement (Second) of Judgments § 57 (1980). The language of the judgment itself mandates that any settlement be one entered in good faith and requires Judge Bilby to approve any settlement agreement. We find nothing in the language

that precludes New West from challenging in the trial court any settlement reached in the federal court case. Under the circumstances, therefore, we find no merit to New West's contentions.

### DENIAL OF MOTION TO AMEND

New West did not file its motion to amend in order to assert a cross-claim against Buck's until after the court had granted Citizens' motion for summary judgment and had ruled on New West's objection to the form of judgment. The court denied the motion as untimely. The determination of a motion to amend a pleading is discretionary with the trial court, although amendments are to be liberally permitted. *Owen v. Superior Court,* 133 Ariz. 75, 649 P.2d 278 (1982). Considering the fact that there was no pending complaint to which an amended answer could be filed when the motion was filed, we find no abuse of discretion in the court's ruling.

Citizens will be awarded attorney's fees on appeal upon compliance with Rule 21(c), Ariz.R.Civ.App.P., 17B A.R.S. Affirmed.

DRUKE, P.J., and HATHAWAY, JJ., concur.